UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN E. VICK,

          Plaintiff,

  v.

TONY HERNANDEZ, et al.,

          Defendants.

CASE NO. C23-6197 BHS

ORDER

THIS MATTER is before the Court on defendants Tony Hernandez, Alexandra Hunter, Keanu Hamilton, Rey Centeno, and the City of Milton's motion for summary judgment, Dkt. 12.

## I. BACKGROUND

At 10:00 p.m. on December 31, 2020, Milton Police Officers Hunter and Centeno saw pro se plaintiff John Vick's SUV parked in a vacant, unpaved lot in Milton, with the engine running and the lights off. They approached the SUV and contacted Vick. Hunter noted that Vick's eyes were "droopy and watery and his speech was slurred." Dkt. 12 at 3 (citing Hunter's police report, Dkt. 13-1). Hunter asked for Vick's license, and he said "no," and began to roll up the window. A second officer standing on the SUV's

passenger side saw a pistol on the passenger seat. Vick began to drive away. The officers yelled for him to stop, and he did, but he would not open his door. A third officer on the scene, defendant Hamilton, tried to open the door and Vick grabbed the door and tried to close it. *Id*. at 3 (citing Hamilton Police Report, Dkt. 13-3). Hamilton attempted to remove Vick from the SUV, Vick resisted, and Hamilton threatened to use his Taser. Vick exited the SUV and was escorted to the officers' patrol vehicle. Hamilton reported that Vick was unsteady and that Hamilton had to hold him up. Dkt. 12 at 4 (citing Dkt. 13-3 at 2).

Vick acknowledged that he had consumed alcohol but refused to take a field sobriety test or a breathalyzer test. Vick was arrested for suspicion of driving under the influence, and his pistol was seized. The officers obtained a warrant for a blood draw and, some three and half hours after they first contacted Vick, they obtained a blood sample. Vick was jailed and bailed out the next day. On January 4, 2021, he was charged with DUI. On January 8, the charge was dismissed without prejudice pending the results of the toxicology test. On December 19, 2022,[1] the state's lab reported that Vick's blood showed alcohol and cocaine use, and the Milton prosecutor charged Vick with DUI two days later. The charges were dropped in April 2023.

In December 2023, Vick sued the officers, Chief of Police Hernandez, the City of Milton Police Department, and the City of Milton. He asserts claims for violation of his Second and Fourth Amendment constitutional rights, his right to travel, and false

---

[1] Presumably the delay was related to COVID-19.

imprisonment. Dkt. 1 at 6. His complaint asserts that Hunter told him he was free to leave, but then "allowed" Centeno and Hamilton to "assault and kidnap" him. *Id*. at 7. He contends there was "no probable cause or reasonable suspicion," that he was held against his will, and that the defendants impeded his right to travel. He asserts that the defendants stole his gun and his blood and violated his Fourth Amendment rights. *Id*. He seeks $10,000,000 and asks the Court to remove Centeno from police service. *Id*. at 8.

The defendants seek summary judgment on each claim. The issues are addressed in turn.

## II.   DISCUSSION

**A.     Summary Judgment Standard.**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must *view all evidence in the light most favorable to the nonmoving party* and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

The moving party bears the initial burden of showing that there is no evidence that supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

**B.      Vick's Fourth Amendment Claim fails as a matter of law.**

The defendants' summary judgment motion asserts that there was probable cause to arrest Vick for suspicion of DUI. They assert that neither Vick's claim that Hunter told him he could leave, nor the fact that the charges were ultimately dropped, undermine the conclusion that there was probable cause to arrest him, as a matter of law.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) a violation of the rights secured by the Constitution and laws of the United States, and that (2) the deprivation was committed by a person acting under color of state law. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981). An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988). On the other hand, the existence of probable cause

vitiates any claim of unlawful arrest. *Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1199 (W.D. Wash. 2008).

Defendants contend that they had probable cause to arrest Vick as a matter of law. Vick was in his running SUV without lights in a vacant lot. The officers noticed he had watery, droopy eyes, and lethargic movements. He would not provide his license and began to drive off. When officers removed him from the vehicle they smelled alcohol on his breath, and Vick admitted he had been drinking. They also emphasize that a judge determined there was probable cause when issuing a warrant for a blood draw. They argue that there was probable cause to arrest Vick and that the fact the charges were ultimately dropped does not change that conclusion. Defendants argue that Vick's false imprisonment claim similarly fails because there was probable cause to arrest and hold him.

Vick did not file a response to the defendants' summary judgment motion. He did file a seven page "supplement" to his complaint, Dkt. 14, and various exhibits in support of that supplement, Dkt. 15. The defendants did not file a reply.

Vick asserts that he was "abducted, kidnapped and assaulted and extorted by 3 sovereign citizens claiming to work for the City of Milton Police Department." Dkt. 14 at 1. He claims Hunter was rude but also that she told him he was free to go, and to have a good night. He asserts that people often park on that vacant lot, and that officer Centeno banged on his car like a maniac. He asserts he told Centeno that he did not consent to the stop and that Centeno did not articulate probable cause for stopping him. *Id*. He contends that even though the K9 unit did not find any drugs, the City of Milton wants the Court to

1  believe that he was "high on drugs." *Id*. at 5. He contends the officers told the judge a
2  "pack of lies" to obtain a warrant, and stole his blood. *Id*. Vick claims that the defendants
3  (with the backing of Chief Hernandez and the City of Milton and its courts) assaulted and
4  attempted to extort him without reasonable suspicion or probable cause. *Id*. at 3.

5        Vick's lengthy narrative does not address any of the authorities cited in
6  defendants' motion, and it does not address the defendants' evidence that Vick admitted
7  he had been drinking, or that his blood sample demonstrated that that was true. Vick
8  contends the blood draw should not be admissible against him because it is "fruit of the
9  poisonous tree," but he does not dispute that it showed he had just under the legal limit of
10 alcohol in his system when the blood was drawn. Dkt. 14 at 3. Other than repeatedly
11 stating that the officers had no probable cause to stop him, he does not address the facts
12 and evidence the defendants cite in support of their claim that there was probable cause to
13 arrest Vick for suspicion of driving under the influence, and that under well-established
14 authorities, probable cause is a defense to his false arrest and false imprisonment
15 constitutional claims.

16       The Constitution permits an officer to arrest a suspect without a warrant if there is
17 probable cause to believe that the suspect has committed or is committing an offense.
18 *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). The ultimate conclusion of whether
19 probable cause exists is a mixed question of law and fact. *United States v. Merriweather*,
20 777 F.2d 503, 505 (9th Cir. 1985). The validity of the arrest does not depend on whether
21 the suspect actually committed a crime. An arrest is justified when the facts and
22 circumstances within an officer's knowledge are sufficient to warrant a prudent person's

belief that the suspect has committed, is committing, or is about to commit an offense. *See DeFillippo*, 443 U.S. at 36–37. The Court considers whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Graham v. Connor*, 490 U.S. 386, 397 (1989).

Even if the Court were to construe Vick's filing as a properly submitted affidavit in opposition to summary judgment, it is insufficient to create a question of fact as a matter of law. Even viewing the evidence in the light most favorable to Vick, he admitted he had been drinking. He does not now deny that he was drinking, or that he told the officers he had been drinking at the time. He does not rebut the officers' testimony that his eyes were bloodshot and droopy, that he smelled of alcohol, and that his blood sample revealed both that he had alcohol and indicators of cocaine in his system four hours after they first contacted him. Vick admits he did not walk to the patrol car and instead asserts the officers "drug" him there. This is consistent with the officers' account that Hamilton had to help Vick to the patrol vehicle. The officers had probable cause to arrest Vick as a matter of law. The fact that the charges were ultimately dropped is not evidence or proof of the contrary.

Vick's supplement also asserts that he gave Centeno the opportunity to "articulate reasonable suspicion or probable cause," and that he could not "articulate any reasonable suspicion or probable cause for this nonconsensual *Terry*[2] stop." Dkt. 14 at 2. Vick does

---

[2] Named for *Terry v. Ohio*, 392 U.S. 1 (1968).

not expand on this argument, but it could be interpreted as a claim that the officers had not basis for approaching him in the first place. This is not correct; an officer "merely asking questions does not constitute a *Terry* stop." *Doscher v. City of Tumwater*, No. 22-cv-5340 RJB, 2022 WL 3867365 at *5 (W.D. Wash. August 30, 2022) (citing *United States v. Brown*, 996 F.3d 998, 1005 (9th Cir. 2021)).

The officers' Answer asserts that they did not violate Vick's constitutional rights, but that even if they did, they are nevertheless entitled to qualified immunity because any violation was not clearly established. Dkt. 7 at 2. This argument does not appear in the summary judgment motion, but it is an additional basis for dismissing this claim.

Qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The Supreme Court has endorsed a two-part test to resolve claims of qualified immunity: a court must decide (1) whether the facts that a plaintiff has alleged "make out a violation of a constitutional right," and (2) whether the "right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).[3] Qualified immunity protects officers not just from liability, but from suit; thus, the claim should be resolved "at the earliest possible stage in litigation." *See Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). The purpose of qualified immunity is "to recognize that holding officials liable for reasonable mistakes might unnecessarily

---

[3] In *Pearson*, the Supreme Court reversed *Saucier's* prior mandate requiring district courts to decide each question in order. *See Pearson,* 555 U.S. at 233.

paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). Because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause [to arrest] is present," qualified immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*, 483 U.S. at 631). Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Vick has not cited any authority supporting his conclusory claim that under the largely undisputed circumstances of this case, it was clearly established that the officers violated his constitutional rights by merely asking him questions, or by arresting him for suspicion of DUI after observing him and after he admitted he had been drinking.

The officers' summary judgment motion on Vick's § 1983 Fourth Amendment false arrest and false imprisonment claims is **GRANTED** and those claims are **DISMISSED** with prejudice.

C. **Vick's Second Amendment claim fails as a matter of law.**

Vick's complaint asserts that the officers violated his Second Amendment constitutional rights, presumably by confiscating his pistol during his arrest. Dkt. 1 at 6. The defendants seek summary judgment on this claim, arguing that temporarily seizing a loaded pistol during a DUI arrest is required under RCW 9.41.098(e), and is not a violation of the owner's second amendment right to bear arms as a matter of law. Dkt. 12

ORDER - 9

at 10. They also assert that Vick repeatedly told them they could take his pistol but that he did not consent to their searching his vehicle. *Id*.

Vick's supplement does not address these arguments, or the authority cited in defendants' motion. Instead, he states that his Second Amendment rights were "stripped and violated every single day for the 2+ years that the Milton Police had possession of his constitutionally protected property." Dkt. 14 at 3.

Vick does not cite any authority for this proposition, and the Court is aware of none. Vick has not provided evidence or authority establishing that the officers' confiscating his pistol under RCW 9.41.098(e) during a DUI arrest and is not a violation of his second amendment rights as a matter of law, and it is not a clearly established violation as a matter of law. The defendants' motion for summary judgment on Vick's § 1983 Second Amendment claim is **GRANTED**, and it is **DISMISSED** with prejudice.

**D.     Vick's Right to Travel claim fails as a matter of law.**

Vick's complaint asserts that the officers violated his constitutional right to travel when they arrested him without probable cause. Dkt. 1 at 6. The defendants argue that this claim fails as a matter of law because there is no such constitutional right, and a lawful arrest does not violate any such right as a matter of law. Dkt. 12 at 11 (citing *Lauran v. U.S. Forest Serv.*, 141 F. A'ppx 515, 520 (9th Cir. 2005)). Vick's supplement does not address this authority and it does not even mention his "right to travel" claim. He cites no authority supporting the proposition that it is a violation of an unspecific constitutional right to travel to arrest someone for suspicion of DUI. The motion for summary judgment on this claim is **GRANTED** and it is **DISMISSED** with prejudice.

**E.    Vick's Monell claims against the City of Milton and its Police Department fail as a matter of law.**

To set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991). Under *Monell*, a plaintiff must allege: (1) that a municipal employee violated a constitutional right; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) that those customs or policies were the "moving force" behind the constitutional right violation. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997). A municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691. A municipality may be liable for inadequate police training when "such inadequate training can justifiably be said to represent municipal policy" and the resulting harm is a "'highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006); (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 409).

Vick asserts each of his claims against the officer defendants, Chief Hernandez, and the City of Milton and its Police Department. The defendants' motion asserts that Vick has not identified any City or Department policy, custom or practice that was the moving force behind any constitutional deprivation. Dkt. 12 at 12 (citing *Monell,* 436

U.S. 658). Indeed, Vick has not met his summary judgment burden of demonstrating that there was a constitutional deprivation, at all, and certainly not one caused by the City of Milton's policies. Furthermore, the Milton Police Department is not an entity subject to suit separate from the City of Milton. Dkt. 12 at 13 (citing *Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1207 (W.D. Wash. 2008) ("a plaintiff must name the county or city itself as a party to the action, and not the particular municipal department[.]")).

The City's and the Police Department's motion for summary judgment on Vick's claims against them is **GRANTED**, and those claims are **DISMISSED** with prejudice.

**F.     Vick's claims against Police Chief Hernandez fails as a matter of law.**

Vick's complaint names Milton Police Chief Hernandez as a defendant, but he has not alleged any facts tying Hernandez to any constitutional violation. Hernandez was not involved in Vick's arrest, and Vick's supplement asserts only that Hernandez told him that officer Centeno changed his name. Vick has not factually or legally connected Hernandez to any constitutional violation as a matter of law. The summary judgment motion on Vick's claims against Hernandez is **GRANTED**, and those claims are **DISMISSED** with prejudice.

***

The defendants' summary judgment motion, Dkt. 12, is **GRANTED**, and all of Vick's claims against them are **DISMISSED** with prejudice. The Clerk shall enter a **JUDGMENT** and close the case.

**IT IS SO ORDERED**.

//

Dated this 1st day of October, 2024.

_____
BENJAMIN H. SETTLE
United States District Judge